UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHANEA PORTER, et al., | ) | CASE NO. 1:12-cv-01186-PAG |
| | ) | |
| on behalf of themselves and all others similarly situated, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| Plaintiffs, | ) | |
| vs. | ) | **PLAINTIFFS' OPPOSITION TO DEFENDANT MC EQUITIES' MOTION TO STAY PROCEEDINGS AND COMPEL ALTERNATIVE DISPUTE RESOLUTION** |
| MC EQUITIES, LLC, et al. | ) | |
| Defendants. | ) | |

Representative Plaintiffs Shanea Porter and Lisa Conley, on behalf of themselves and all similarly-situated employees of Defendants, hereby oppose Defendant MC Equities, LLC ("MC Equities")'s Motion to Stay Proceedings and Compel Alternative Dispute Resolution. First, MC Equities is not a party to the agreements that are the subject of its motion, and therefore MC Equities does not have standing to enforce them. Second, the agreements do not address the arbitrability of collective claims, such as those asserted by all of the Plaintiffs in this matter, and therefore Plaintiffs cannot be forced to arbitrate such claims. As the U.S. Supreme Court has held on this precise issue, where there is no agreement to authorize class arbitration, parties to a dispute cannot be compelled to submit the dispute to class arbitration. Stolt-Nielsen SA v. AnimalFeeds International, 130 S. Ct. 1758, 1776, 176 L.Ed.2d 605 (2010). Accordingly, MC Equities' motion should be denied.

## I. Statement of Facts

According to the plain language of the documents attached to MC Equities' motion, five of the seven Plaintiffs who have opted in to this matter so far – Lisa Conley, James Conley, Shanea Porter, William Sturgill, and Betty Wilson – each signed an "Alternate Dispute

Resolution Agreement" ("Agreement") in their individual capacity as an "Employee" with an unidentified "Employer." (MC Equities' Motion, Exh. 1). One other Agreement produced by MC Equities contains an illegible signature. (Id.). There is no Agreement signed either by Plaintiff Alice Lundy or by Plaintiff Roy Allen Slusher, both of whom have submitted sworn testimony that the Agreement with the illegible signature is not theirs, and that they do not recall ever signing any arbitration agreement whatsoever with either MC Equities or with Defendant Employers Resource Management, Inc. (A copy of the Affidavit of Alice Lundy and a copy of the Affidavit of Roy Allen Slusher are attached collectively hereto as Exhibit 1).

The term "Employer" is not defined in any of the Agreements. However, the Agreements are each printed on the letterhead of Employers Resource Management. (Motion, Exh. 1). Significantly, MC Equities is not referenced anywhere in any of the Agreements. (Id.).

In all, there appear to be no fewer than three different versions of the Agreements. For example, some of the Agreements begin with the mutual affirmation that "The Employer and the Employee whose signature is affixed hereto mutually recognize . . .," while other Agreements are unilateral, beginning "The Employee whose signature is affixed hereto recognize (*sic*) . . .," among other differing terms. (Id.).

Notwithstanding the foregoing differences between the Agreements, each of the Agreements does state that the legal consideration for the five out of seven Plaintiffs who signed the Agreements includes their respective agreement as to the following:

> the many benefits and advantages [to arbitration] to all parties, includ[ing] speed of process, cost effectiveness, privacy and confidentiality, use of specialized and experienced decision-makers, and complete due process and fairness to all parties, [as well as] . . . the continuation of the employment relationship . . .

(Id.). (emphasis added).

Additionally, each of the Agreements states further as follows:

> Employer and Employee agree that any claim or dispute between them or against the persons or entities named above, whether related to the employment relationship or otherwise . . . shall be exclusively resolved using a two-step Alternate Dispute Resolution (ADR) process . . .

(Id.).

On May 14, 2012, Representative Plaintiffs Shanea Porter and Lisa Conley filed a Collective Action Complaint in this matter on their own behalf and on behalf of all similarly-situated employees against MC Equities, asserting collective claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

On May 15, 2012, Plaintiffs James Conley, William Sturgill, Betty Wilson and Roy Allen Slusher filed Consent Forms to join this collective action as Plaintiffs.

On May 30, 2012, Plaintiff Alice Lundy filed a Consent Form to join this collective action as a Plaintiff.

On June 5, 2012, all of the Plaintiffs amended their Collective Action Complaint to add Employers Resource Management as a Defendant.

On June 15, 2012, MC Equities filed the instant motion, seeking to stay all of the Plaintiffs' Collective Action Complaint and compel alternative dispute resolution proceedings for all of the current and potential Plaintiffs in this matter, based on the Agreements discussed above between the unidentified "Employer" and, respectively, Mrs. Conley, Mr. Conley, Ms. Porter, Mr. Sturgill, and Ms. Wilson.

## II. Argument

### A. The Arbitrability of the Class Claims is a "Gateway" Issue That Must Be Decided By the Court

As a preliminary matter, the determination of the arbitrability of Plaintiffs' collective claims is a "gateway" issue to be determined by the Court, and not an arbitrator, as argued by MC Equities. (Motion, p. 6).

According to the U.S. Supreme Court, whether an agreement authorizes class arbitration is

> the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). As the Court explained further,

> a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide. . . . Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court.

Id., at 84. As such, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." Reed Elsevier, Inc. v. Crockett, Case No. 3:10-CV-248, 2012 WL 604305, *4 (S.D. Ohio Feb. 24, 2012)[1] (quoting AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). See also Rent-A-Center, West, Inc. v. Jackson, 130 S.Ct. 2772, 2777 n.1 (majority op.), 2783-85 (dissenting op.), 177 L.Ed.2d 403 (2010) (Scalia, J., for the Court, and Stevens, J., dissenting) (reaffirming Court's longstanding rule that, in the absence of "clear and unmistakable agreement" to the contrary, issue of arbitrability is for court to decide).

In this case, as discussed in further detail below with regard to the Agreements produced by MC Equities, which have been signed by only five of the seven current Plaintiffs, and – with the exception of one illegible signature – none of the potential Plaintiffs, there is no "clear" and "unmistakable" agreement between all of the parties to this action that the arbitrability of all of their claims should be decided by an arbitrator. In the absence of such a consensus, the arbitrability of all of the Plaintiffs' collective claims is for the Court to decide.

### B. MC Equities Does Not Have Standing to Enforce the Alternate Dispute Resolution Agreements, as It Is Not a Party to the Agreements

Turning to the substance of MC Equities' motion, the purpose of the Federal Arbitration Act ("FAA") is "to make arbitration agreements as enforceable as other contracts, but not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). "The FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" Stolt-Nielsen SA v. AnimalFeeds International, 130 S. Ct. 1758, 1773, 176 L.Ed.2d 605 (2010) (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). In addition to the rules established by the FAA, and because arbitration agreements are contracts, federal courts review the enforceability of arbitration agreements according to state law of contract formation. Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 972 (6th Cir. 2007).

Under Ohio law, only a party to a contract or an intended third-party beneficiary – and not an indirect or incidental beneficiary – may bring an action to enforce a contract. Bell v. City of Cleveland, Case No. 1:07-cv-1476, 2007 WL 2459906, *4 (N.D. Ohio, Aug. 24, 2007) (citing

[1] Copies of unpublished decisions are attached collectively hereto as Exhibit 3.

Hill v. Sonitrol of Southwestern Ohio, Inc., 36 Ohio St.3d 36, 40-41 (1988)). A third party who simply receives a benefit from an agreement, without more, is not an intended third-party beneficiary of that contract. Id. (citation omitted). See, e.g., Defiance Hosp. v. Fauster-Cameron, Inc., 344 F. Supp. 2d 1097, 1118 (N.D. Ohio 2004) (citations omitted) (dismissing claims due to plaintiffs' lack of standing to enforce contract: "It is a well-settled principle of contract law that only a party to a contract or an intended third-party beneficiary may bring an action on a contract. Plaintiffs are neither parties to the employment contracts between the Clinic employees and the Clinic, nor are they third-party beneficiaries."); Spalsbury v. Hunter Realty, Inc., Case No. 76874, 2000 WL 1753436 (Ohio Ct. App. Nov. 30, 2000) (denying motion to compel arbitration, holding "appellant lacks standing to enforce the arbitration agreement as it was not a party thereto"; "It would have been very easy for the parties to make the corporation a party to the . . . agreement, but they chose not to do so. Also, the corporation could have executed a separate agreement with the appellee to govern disputes that might arise between the appellee and the corporation, but for whatever reason, no such agreement was ever formalized."). See also McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994) (observing that the federal policy favoring arbitration does not apply to "situations in which the identity of the parties who have agreed to arbitrate is unclear").

In this case, in support of its motion, MC Equities has produced Agreements signed by five of the seven Plaintiffs who have opted in to this action so far. (See Motion, Exh. 1). However, according to their express terms, the Agreements are only between an "Employer" and an "Employee." (Id.). While there is no express definition of either term in any of the Agreements, "Employee" is implicitly defined by reference to the individual "whose signature is affixed hereto," i.e., the individual Plaintiff who signed the particular Agreement. (Id.). The

Agreements contain no definition whatsoever, whether express or implied, as to who the "Employer" is who may enforce each Agreement. The only indication within the Agreements as to any corporate entity at all is to Defendant Employers Resource Management: each of the Agreements is printed on Employers Resource Management's letterhead; as indicated by the computer file signature on the bottom of several of the documents, such Agreements were created by "ERM," presumably Employers Resource Management; and a blank copy of the arbitration agreement in substantially similar form is located on Employers Resource Management's website. (See http://www.employersresource.com/files/operations/Alternate-Dispute-Resolution-en.pdf; a copy of the Agreement from the website is attached hereto as Exhibit 2).

In contrast to Employers Resource Management, MC Equities is not identified or even referred to in any way in any of the Agreements. At least for purposes of its instant motion, MC Equities' complete absence from any mention in the Agreements is understandable: whereas the unidentified contracting party is labeled as the "Employer"; the five Plaintiffs' legal consideration for the Agreements included "the continuation of the employment relationship" with the unidentified "Employer"; and each of these Plaintiffs signed each of the Agreements "at the advent of their employment" with the "Employer" (Motion, p. 1), MC Equities asserts that "it has no employment relationship with any of the Plaintiffs . . . in any way." (Id., at p. 1, n.1). As a matter of law under the FLSA, Plaintiffs dispute MC Equities' claim that it was not their employer, and Plaintiffs intend to conduct discovery regarding MC Equities' employment relationship with them. However, as a matter of contract law, and by its own admission, MC Equities cannot enforce an arbitration agreement between an "Employer" and five of the Plaintiffs, while at the same time disavowing any employment relationship with these same individuals. In short, MC Equities cannot "have its cake and eat it, too," claiming to be an

"Employer" of five Plaintiffs under the Agreements, but only insofar as to enforce the Agreements against them, and then denying that it is their employer in any other respect.

In sum, because it is not a party to the contracts between an "Employer" and five of the Plaintiffs, MC Equities does not have standing to enforce the Agreements. Accordingly, MC Equities' Motion to Stay Proceedings and Compel Alternative Dispute Resolution should be denied.

**C. All of the Plaintiffs' Collective Claims Are Not Subject to Five of the Plaintiffs' Individual Agreements, Because the Parties Have Not Agreed to Submit Their Claims to Class Arbitration**

Even if the Court finds that MC Equities is the "Employer" of five of the Plaintiffs under the Agreements, notwithstanding MC Equities' own assertion to the contrary, MC Equities' Motion to Stay Proceedings and Compel Alternative Dispute Resolution should still be denied, as the Agreements do not contemplate collective claims such as those asserted by all of the Plaintiffs in this matter.

In Stolt-Nielsen SA v. AnimalFeeds International, the U.S. Supreme Court directly addressed the question that is the subject of MC Equities' motion: "[W]hether imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with the Federal Arbitration Act." 130 S.Ct., at 1764. The Court answered in the negative: "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party . . . *agreed to authorize* class arbitration." Id., at 1776 (emphasis in original).

In this case, each of the Agreements covers the following claims: "any claim or dispute between [the "Employer" and the "Employee"] or against the persons or entities named above, whether related to the employment relationship or otherwise . . ." (Motion, Exh. 1). This language is substantively the same as the language of the agreement at issue in Stolt-Nielsen, which stated

that "[a]ny dispute arising from the making, performance or termination of this [agreement]" was subject to arbitration. Stolt-Nielsen, 130 S.Ct., at 1765. This provision was deemed "silent" as to collective claims and therefore could not be used to compel the arbitration of collective claims. As the U.S. Supreme Court has explained, "[w]e think that the differences between bilateral and class-action arbitration are too great for arbitrators to presume . . . that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." Id., at 1776. See also Reed Elsevier, Inc., 2012 WL 604305, at *10 (quoting AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1776, 179 L.Ed.2d 742 (2011)) (rejecting argument that arbitration agreement covering "any controversy" between parties included class claims, in light of "fundamental" differences between individual and class arbitration).

Because the language in five of the Plaintiffs' Agreements is silent as to collective claims, the U.S. Supreme Court's holding in Stolt-Nielsen squarely applies: The Agreements cannot be used to compel the arbitration of Plaintiffs' collective claims.

In its motion, MC Equities argues that the U.S. Supreme Court's subsequent decision in AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740 (2011), somehow limits the Court's foregoing holding in Stolt-Nielsen. (See Motion, p. 5, n.3). In proffering this argument, MC Equities mischaracterizes the holding as well as the interpretation of both cases.

In Concepcion, the Court addressed a California law which invalidated an arbitration agreement in which the parties had *expressly agreed* to prohibit class claims. See Concepcion, 131 S.Ct. at 1744, 1748 (holding that arbitration agreement which required that claims be brought in "individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding" was enforceable under Federal Arbitration Act, superseding California law). In the absence of such express agreement, however, and where agreements are

silent as to the issue of class arbitration, such as in Stolt-Nielsen, and equally in this case, the Court in Concepcion reinforced its holding in Stolt-Nielsen:

> Although we have had little occasion to examine classwide arbitration, our decision in Stolt-Nielsen is instructive. In that case we held that an arbitration panel exceeded its power under § 10(a)(4) of the FAA by imposing class procedures based on policy judgments rather than the arbitration agreement itself or some background principle of contract law that would affect its interpretation. We then held that the agreement at issue, which was silent on the question of class procedures, could not be interpreted to allow them because the "changes brought about by the shift from bilateral arbitration to class-action arbitration" are "fundamental." This is obvious as a structural matter: Classwide arbitration includes absent parties, necessitating additional and different procedures and involving higher stakes. Confidentiality becomes more difficult. And while it is theoretically possible to select an arbitrator with some expertise relevant to the class-certification question, arbitrators are not generally knowledgeable in the often-dominant procedural aspects of certification, such as the protection of absent parties. The conclusion follows that class arbitration, to the extent it is manufactured . . . rather than consensual, is inconsistent with the FAA.
>
> First, the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment . . .
>
> Second, class arbitration requires procedural formality . . . If procedures are too informal, absent class members would not be bound by the arbitration. For a class-action money judgment to bind absentees in litigation, class representatives must at all times adequately represent absent class members, and absent members must be afforded notice, an opportunity to be heard, and a right to opt out of the class. At least this amount of process would presumably be required for absent parties to be bound by the results of arbitration.
>
> We find it unlikely that in passing the FAA Congress meant to leave the disposition of these procedural requirements to an arbitrator. Indeed, class arbitration was not even envisioned by Congress when it passed the FAA in 1925 . . . And it is at the very least odd to think that an arbitrator would be entrusted with ensuring that third parties' due process rights are satisfied . . .

Concepcion, 131 S.Ct., at 1750-52 (citing Stolt-Nielsen and other cases). The Court in Concepcion concluded the foregoing discussion by opining, "Arbitration is poorly suited to the higher stakes of class litigation." Id., at 1752.

It is indisputable that the Agreements in this case are silent on the issue of class arbitration. As such, the U.S. Supreme Court's holdings in both Stolt-Nielsen and Concepcion are consistent with each other as applied to the Agreements, namely, that an arbitration agreement that is silent on the issue of collective claims cannot be used to compel the arbitration of such claims. See Reed Elsevier, Inc., 2012 WL 604305, at *12 ("Even if this Court had concluded that either state or federal law required this Court to interpret the parties' agreements in such a manner to allow classwide arbitration, this Court could not give effect to that construction, because it would be contrary to the April 27, 2011, decision by the United States Supreme Court in AT & T Mobility LLC v. Concepcion . . .").

Indeed, the considerations that led the U.S. Supreme Court to distinguish individual arbitration from class arbitration in both Stolt-Nielsen and Concepcion are echoed in the five Agreements at issue here. In this case, the Agreements all cite, *inter alia*, "speed of process, cost effectiveness, privacy and confidentiality, use of specialized and experienced decision-makers, and complete due process and fairness to all parties," as benefits of arbitration. (Motion, Exh. 1). However, as the Supreme Court has explained, none of these considerations are present in the class arbitration which is the subject of MC Equities' motion. See Concepcion, 131 S.Ct., at 1750-52. Accordingly, the five Plaintiffs' Agreements cannot be construed so as to include the collective claims asserted in Plaintiffs' Collective Action Complaint.

In addition to its legal argument, MC Equities also argues that Plaintiffs' Collective Action Complaint should be arbitrated because "Plaintiffs (and all potential Plaintiffs) signed the attached ADR agreements." (Motion, p. 4). No, all of the current and potential Plaintiffs have not signed Agreements attached to MC Equities' motion. Even with regard to the few Plaintiffs who have opted in to this action so far, MC Equities has failed to produce an Agreement for

either Plaintiff Alice Lundy or Plaintiff Roy Allen Slusher, while the signature on another Agreement is illegible. (See Exh. 1). More broadly, it is indisputable that MC Equities is basing its motion on the *assumption* that "all potential Plaintiffs" – whose identities are not even known to the parties at this time – have signed Agreements. Certainly, evidence that all potential Plaintiffs have signed Agreements is not attached to MC Equities' motion. Moreover, the U.S. Supreme Court has cautioned against precisely the kind of assumption made by MC Equities, that absent parties' claims are subject to arbitration: "[A]rbitrators are not generally knowledgeable in the often-dominant procedural aspects of certification, such as the protection of absent parties . . . [I]t is at the very least odd to think that an arbitrator would be entrusted with ensuring that third parties' due process rights are satisfied." Concepcion, 131 S.Ct., at 1751–52. Because MC Equities has not even produced Agreements for all of the seven Plaintiffs who have opted in to this collective action so far, let alone those for any absent parties, and because MC Equities' motion otherwise proceeds on the erroneous and impermissible assumption that all "Plaintiffs and potential Plaintiffs" have signed Agreements, even when such claim is manifestly untrue, MC Equities' motion should be denied.

Finally, MC Equities attempts to characterize Plaintiffs' Collective Action Complaint as "bypass[ing]" the Agreements. (Motion, p. 2). Particularly in light of the legal authority discussed above, together with the plain language of the Agreements themselves, this is simply untrue. Plaintiffs neither dispute nor contest the enforceability of the five Plaintiffs' Agreements under the mutually agreed-upon circumstances defined in the Agreements, such as for individual claims. However, where, as in this case, all of the Plaintiffs have brought claims based upon Defendants' classwide practices, the U.S. Supreme Court has held that class arbitration cannot be inferred from a general agreement to arbitrate individual claims. Stolt-Nielsen, 130 S.Ct., at 1775. As

such, it is MC Equities itself which cannot use five of the Plaintiffs' Agreements to avoid the judicial adjudication of all of the Plaintiffs' classwide claims by forcing all of the Plaintiffs and all absent class members – who may not have agreed to arbitrate such claims – to arbitration.

In sum, MC Equities' ultimate conclusion – "the fact that the Agreements do not provide for class arbitration is not a defense to their enforceability" – is misplaced. The individual Agreements may each generally be enforceable against the five Plaintiffs who signed them, and in their individual capacity, but, pursuant to the U.S. Supreme Court's holding in Stolt-Nielsen, as affirmed by the Court in Concepcion, the Agreements do not include class arbitration in this case. Accordingly, MC Equities' Motion to Stay Proceedings and Compel Alternative Dispute Resolution should be denied.

## III. Conclusion

For all of the foregoing reasons, MC Equities' Motion to Stay Proceedings and Compel Alternative Dispute Resolution should be denied.

Respectfully submitted,

/s/ Daniel L. Messeloff
Daniel L. Messeloff (0078900)
The Messeloff Law Firm LLC
915 Rockefeller Building
614 W. Superior Avenue
Cleveland, Ohio 44113
Phone: 216-586-4795
Facsimile: 216-274-9246
messelofflawfirm@gmail.com

/s/ Anthony J. Lazzaro
Anthony J. Lazzaro (0077962)
The Lazzaro Law Firm, LLC
920 Rockefeller Building
614 W. Superior Avenue
Cleveland, Ohio 44113
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2012, a copy of the foregoing *Plaintiffs' Opposition to MC Equities' Motion to Stay Proceedings and Compel Alternative Dispute Resolution* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system. A copy of the foregoing has also been mailed via regular U.S. Mail to the following counsel for Defendant Employers Resource Management, Inc.:

Samuel A. Diddle
Eberle, Berlin, Kading, Turnbow, & McKlveen
1111 W. Jefferson St., Ste. 530
P.O. Box 1368
Boise, ID 83701

*Counsel for Defendant Employers Resource Management, Inc.*

/s/ Daniel L. Messeloff
Attorney for Plaintiffs